BOOTH v AUTO-OWNERS INSURANCE COMPANY

Docket No. 192527. Submitted March 5, 1997, at Detroit. Decided July 25, 1997, at 9:35 A.M. Leave to appeal sought.

Christine Booth brought an action in the Monroe Circuit Court against her no-fault insurance carrier, Auto-Owners Insurance Company, seeking payment to her parents for 112 hours of attendant care a week they provide the plaintiff, who was injured in an automobile accident while making a delivery for her employer. The employer's worker's compensation carrier had agreed to compensate plaintiff's parents for their services, but limited to fifty-six hours a week pursuant to MCL 418.315(1); MSA 17.237(315)(1). The court, Michael W. LaBeau, J., granted summary disposition for the defendant, finding that the plaintiff failed to submit evidence establishing that she had incurred expenses relating to the services provided by her parents because she was not charged for the services, and that she could not seek no-fault benefits from the defendant for her parents' services in excess of fifty-six hours a week because the plaintiff could have obtained payment for the remaining 112 hours if the care for those hours was provided by a commercial agency instead of her parents. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition on the basis that the plaintiff had not billed her parents for the services they rendered. There is no requirement that family care providers actually bill the insured before it can be found that allowable charges or expenses have been incurred. The jury must decide whether the plaintiff is entitled to collect for the services rendered by her parents and the value of such services.

2. The care provided by the plaintiff's parents is not duplicative of the care that the plaintiff could obtain by hiring a commercial agency. The Supreme Court has held, with respect to offsetting benefits under MCL 500.3109(1); MSA 24.13109(1), that a no-fault carrier cannot require an injured person to obtain medical service from a particular provider. The defendant cannot require the plaintiff to choose a commercial agency to provide nursing and attendant services. Because of the Legislature's limitation on the benefit available under the Worker's Disability Compensation Act for

attendant or nursing care provided by certain family members, the benefit available under the Worker's Disability Compensation Act is not duplicative of the benefit that the plaintiff seeks to recover under the no-fault act. The defendant was not entitled to summary disposition on the basis that the plaintiff did not hire a commercial agency to provide care that was required in excess of fifty-six hours a week.

Reversed.

WHITE, J., concurring, stated that the trial court erred in finding that no expenses had been incurred as a matter of law; that the defendant cannot, under MCL 500.3109(1); MSA 24.13109(1), obtain a setoff for compensable services the plaintiff could have obtained from an outside provider if, because of difference in quality of service, those services are not duplicative of the services provided by her parents; and that this case is governed by § 3109(1).

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION BENEFITS — HEALTH CARE PROVIDERS — FAMILY MEMBERS.

Three requirements must be satisfied in order for a no-fault insurer to be responsible for personal protection insurance benefits: the expense must have been incurred, the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and the amount of the expense must have been reasonable; charges or expenses may be found to have been incurred with regard to allowable expenses for services provided to the insured by the insured's family members even though the insured was not actually billed by the family members; whether the insured is entitled to collect the value of the services and the determination of the value are matters for the jury to determine (MCL 500.3107[1][a]; MSA 24.13107[1][a]).

2. WORKER'S COMPENSATION — ATTENDANT OR NURSING CARE — FAMILY MEMBERS.

The Worker's Disability Compensation Act allows an injured employee to receive compensation for up to fifty-six hours of attendant or nursing care provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons but does not limit the benefit available where the care is provided by someone other than the employee's spouse, brother, sister, child, or parent (MCL 418.315[1]; MSA 17.237[315][1]).

3. INSURANCE — NO-FAULT — SETOFFS FOR OTHER BENEFITS.

A no-fault insurer may not require a person injured in a work-related automobile accident to obtain medical service from a particular provider; a no-fault insurer is entitled to set off from the personal protection insurance benefits otherwise payable to an injured

insured benefits provided or required to be provided under the laws of any state or the federal government; the no-fault act does not mandate the setoff of all governmentally provided benefits, only duplicative benefits (MCL 500.3109[1]; MSA 24.13109[1]).

*Law Offices of Martin M. Miller* (by *Martin M. Miller* and *Charles W. Wojno*), for the plaintiff.

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *James L. Borin* and *Nancy J. Bourget*), for the defendant.

Before: CAVANAGH, P.J., and REILLY and WHITE, JJ.

PER CURIAM. In this insurance dispute, plaintiff appeals as of right the trial court's decision granting summary disposition in favor of defendant. We reverse.

Defendant is plaintiff's no-fault insurance carrier. In 1989, plaintiff was involved in a serious automobile accident while making a delivery for her employer. As a result, she suffered a severe closed head injury and was in a coma for several months. After her discharge from the hospital in 1989, plaintiff went to live with her parents, Dawn and Thomas Booth. Since that date, Dawn allegedly has provided attendant care for her daughter twenty-four hours a day, seven days a week. Thomas also cares for plaintiff when he is home.

Plaintiff's employer's worker's compensation carrier agreed to compensate Dawn and Thomas for their services at a rate of $8 an hour. Pursuant to § 315(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.315(1); MSA 17.237(315)(1), this compensation was limited to fifty-six hours a week. After defendant refused to pay Dawn for the remaining 112 hours of care a week, plaintiff filed this suit. In grant-

ing summary disposition in favor of defendant, the trial court held that plaintiff failed to submit evidence establishing that she had incurred expenses relating to the attendant care services provided by her parents because she was not charged for these services. The court also held that plaintiff could not seek no-fault benefits from defendant for her parents' services in excess of fifty-six hours a week because plaintiff could have obtained payment from her worker's compensation carrier if the care was provided by a commercial agency instead of her parents. We disagree with both rationales for granting summary disposition in favor of defendant and, therefore, reverse.

Section 3107(1)(a) of the no-fault act, MCL 500.3107(1)(a); MSA 24.13107(1)(a), provides that personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." There are three requirements that must be satisfied in order for a no-fault insurer to be responsible for PIP benefits: (1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable. *Moghis v Citizens Ins Co of America*, 187 Mich App 245, 247; 466 NW2d 290 (1991).

This Court previously has considered compensation for care provided by family members in *Visconti v DAIIE*, 90 Mich App 477; 282 NW2d 360 (1979), and *Van Marter v American Fidelity Fire Ins Co*, 114 Mich App 171; 318 NW2d 679 (1982).

In *Visconti*, the plaintiff sought to recover the value of his wife's services at a rate of $20 a day for the 132 days of care she provided while the plaintiff's leg was in a cast. The Court held that the services were compensable under the no-fault act and cited subsections a and b of the version of MCL 500.3107; MSA 24.13107 in effect at that time, the pertinent parts of which are unchanged in the current version of MCL 500.3107(1); MSA 24.13107(1).

Similarly, in *Van Marter*, the father of the insured (who was also the guardian of the insured's estate) sought to recover no-fault benefits for the value of services rendered by the insured's stepmother. The defendant recognized that it was obligated to pay for the value of the services under *Visconti*, but claimed that the three-year limitation period for replacement services was applicable. This Court agreed with the trial court that the services were compensable under MCL 500.3107(a); MSA 24.13107(a) (now MCL 500.3107[1][a]; MSA 24.13107[1][a]) and the three-year limitation period did not apply to the services the stepmother was rendering to the insured.

This Court has extended the principles of *Visconti* and *Van Marter* in *Reed v Citizens Ins Co of America*, 198 Mich App 443; 499 NW2d 22 (1993), and *Botsford General Hosp v Citizens Ins Co*, 195 Mich App 127; 489 NW2d 137 (1992).

In *Reed, supra* at 450, the issue was whether room and board is an allowable expense "when the insured who could be institutionalized is cared for at home." The Court, *id.* at 452, noted, "family members may be compensated for the services they provide at home to an injured person in need of care," and cited *Van Marter.* The Court then extended the reasoning of

those cases to hold that "where an injured person is unable to care for himself and would be institutionalized were a family member not willing to provide home care, a no-fault insurer is liable to pay the cost of maintenance in the home." *Reed, supra* at 453.

In *Botsford,* the defendant argued that the plaintiff did not prove that he incurred any expenses for replacement services. See MCL 500.3107(1)(c); MSA 24.13107(1)(c). The plaintiff's wife testified that she mowed the grass, took out the trash, shoveled the sidewalk, and went to the store when the plaintiff would normally have done so. This Court stated that case law "permits the recipient of no-fault PIP benefits to recover for replacement services provided by family members," *Botsford, supra* at 142, and affirmed the jury award for those services. According to the Court, whether the plaintiff was entitled to collect the value of the replacement services and the determination of the value were properly left for the jury to decide. *Id.* at 143.

In this case, defendant argued and the trial court agreed that the value of the care provided to plaintiff was not an allowable expense because plaintiff was not charged by her parents for those services. Pursuant to MCL 500.3107(1)(a); MSA 24.13107(1)(a), allowable expenses consist "of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." According to defendant's argument, no charges for the service provided by plaintiff's parents have been "incurred." Although this Court has not addressed this precise argument in any published opinion that we have located, accepting such an argument would be inconsistent with the

holdings in *Visconti, Van Marter, Reed,* and *Botsford.*
In each of those cases, this Court implicitly held that
"charges" or "expenses" had been "incurred" without
requiring that the insured was actually billed by the
family.[1] We decline to create such a requirement in
this case. As in *Botsford, supra* at 143, whether the
plaintiff was entitled to collect the value of the ser-
vices and the determination of the value are matters
properly left for the jury to decide. Defendant was
not entitled to summary disposition on this basis.

Next, we consider whether defendant was entitled
to summary disposition because, by choosing her par-
ents to provide services, plaintiff failed to make a rea-
sonable effort to obtain benefits available under the
WDCA, and thus was precluded from recovering from
defendant for those services.

Because of the limitation in § 315(1) of the WDCA,
plaintiff could not receive worker's disability compen-
sation for more than fifty-six hours of "[a]ttendant or
nursing care" provided by her parents. However, no
such time limitation applies when the care is pro-
vided by someone other than the "employee's spouse,
brother, sister, child, parent, or any combination of
these persons." Thus, if plaintiff agreed to be cared
for by someone from a commercial agency for 112

---

[1] The decision in *Moghis, supra,* does not require a contrary result. In
that case, this Court reduced a judgment that included $280,000 for past
care by an aide. This Court concluded that "[a]lthough there was testimony
indicating that plaintiff needed some sort of care by an aide, there is no
evidence that this care was actually provided to plaintiff." *Id.* at 247.
*Moghis* does not indicate that the insured must be billed. Rather, the
defect in the plaintiff's proofs was that "the extent of any aid to plaintiff
was not sufficiently established to support a finding that plaintiff incurred
semidependent care by an aide in the past." *Id.*

hours a week, for example, the entire cost of the care would be compensable under the WDCA.

A no-fault insurer is entitled to set off worker's compensation benefits under § 3109(1) of the no-fault act, MCL 500.3109(1); MSA 24.13109(1). *Root v Ins Co of North America*, 214 Mich App 106, 108; 542 NW2d 318 (1995). Defendant, relying on *Perez v State Farm Mut Automobile Ins Co*, 418 Mich 634; 344 NW2d 773 (1984), argues that if an injured person does not exercise a reasonable effort to obtain available worker's compensation benefits, the worker's compensation benefits that were available but not collected are required to be subtracted from any no-fault benefits. According to defendant, plaintiff failed to make reasonable efforts to obtain the full amount of worker's compensation benefits that were available for nursing or attendant care because the entire cost of her care would be compensable under the WDCA if plaintiff used a commercial agency to provide care in excess of the fifty-six hour a week limit imposed by § 315(1) on care provided by plaintiff's parents. Thus, defendant argues, plaintiff's unwillingness to agree to such an arrangement amounts to a failure to use reasonable efforts to obtain benefits available under the WDCA and entitles defendant to set off the cost of her parent's services.

Contrary to defendant's argument, defendant is not entitled to set off the cost of the services provided by plaintiff's parents unless those services are duplicative of benefits required to be paid by the government.

In *Morgan v Citizens Ins Co of America*, 432 Mich 640; 442 NW2d 626 (1989), the plaintiff was injured in an automobile accident on his way to National Guard

training. Because he was on military service at the time, the plaintiff's initial medical expenses were paid by the federal government. Later, the plaintiff underwent surgery at a nonmilitary hospital for a herniated disc. The plaintiff's no-fault insurer refused to pay for the additional expense, and the plaintiff filed suit. The trial court granted summary disposition pursuant to § 3109(1) of the no-fault act in favor of the defendant no-fault insurer. The court held that the plaintiff did not have the option of obtaining nonemergency medical care in a nonmilitary hospital when the federal government was required by law to provide the medical service at a military hospital. This Court affirmed the trial court's decision, finding that the plaintiff elected not to receive benefits offered by the federal government. *Morgan v Evans*, 163 Mich App 115; 413 NW2d 747 (1987).

The Supreme Court reversed and held that the plaintiff was entitled to receive payment from his no-fault carrier. According to the Court, § 3109(1) did not preclude the plaintiff from seeking payment of expenses incurred in a nonmilitary hospital simply because he could have had the procedure performed in a military hospital:

> A person injured in an automobile accident is not required under § 3109(1) to avail himself of whatever medical service in kind a governmental source may provide. Governmental medical service may not be comparable in quality and service with the doctor or hospital service that the injured person purchased or may be able to purchase with the no-fault dollar. Hospitals and doctors are not fungible. There are good hospitals and some that are not, good doctors and some that are not. The Legislature did not intend that however legitimate the injured person's concern regarding the quality of the governmental service in kind —

even if the medicine practiced at the hospital or the doctor is questionable, debatable, or notoriously bad — it is nevertheless a benefit as a matter of law within the meaning of § 3109(1).

The no-fault act preserves to injured persons a reasonable choice of hospitals and physicians although this may add to the premium cost of no-fault insurance. The no-fault insurer cannot, in the name of reducing the premium cost, require an injured person to obtain medical service from a particular provider.

Section 3109(1) does not mandate the offset of all governmentally provided benefits, only duplicative benefits:

\* \* \*

A surgical procedure performed in a military hospital may not, because of differences in quality and service, be duplicative of the medical service that an injured person could obtain and pay for with the no-fault medical expense benefit through the exercise of the choice in medical service providers preserved to injured persons under the no-fault act. [*Morgan*, 432 Mich 647-648.]

In this case, the care provided by plaintiff's parents is not duplicative of the care that plaintiff could obtain by hiring a commercial agency. Because the Supreme Court has held, with respect to offsetting benefits under § 3109(1),that a no-fault insurer cannot require an injured person to obtain medical service from a particular provider, defendant in this case cannot require plaintiff to choose a commercial agency to provide nursing and attendant services. The Legislature chose to limit the benefit available under the WDCA for attendant or nursing care provided by certain family members. Because of this limitation, the benefit available under the WDCA is not duplicative of the benefit plaintiff seeks to recover under the no-fault act.

Defendant cites *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993), and *Owens v Auto Club Ins Ass'n*, 444 Mich 314; 506 NW2d 850 (1993), and argues that "when no-fault insurance is coordinated, a plaintiff agrees to avail himself or herself of the coverage available, which in this case is the by [sic] the workers' [sic] compensation coverage and includes the 56 hour limitation." *Tousignant* and *Owens* are inapposite. Those cases concerned coordination of benefits under § 3109a, MCL 500.3109a; MSA 24.13109(1). See *Tousignant*, *supra* at 307; *Owens*, *supra* at 322. The present case concerns § 3109(1), "[b]enefits provided or required to be provided under the laws of any state or the federal government . . . ."

Furthermore, the rationale underlying the Court's decisions in *Tousignant* and *Owens* does not support defendant's position in this case. *Tousignant* and *Owens* are similar to the present case inasmuch as the insureds, like plaintiff, looked to their no-fault insurer for payment of expenses that would have been paid by another source (the worker's compensation carrier in the present case, the health maintenance organization in *Tousignant*, and the United States Coast Guard and Veteran's Administration in *Owens)* had the injured persons made different choices in their treatment. In *Tousignant* and *Owens*, the Supreme Court held that by choosing to coordinate health care coverage, the insureds agreed in effect to avail themselves of the coverage provided, *Owens*, *supra* at 321, and relinquish choices of physician and facility, where the coverage is provided by a health maintenance organization as in *Tousignant*, *supra* at 310. Thus, the Supreme Court was unwilling to allow the insured to choose to accept the benefits

(e.g. lower premiums) of coordinating coverages and then repudiate the limitations inherent in the health care coverage chosen. In the present case, the limitation in plaintiff's ability to have twenty-four-hour care provided by her parents is the result of a decision made by the Legislature when it amended § 315 of the WDCA.[2] In contrast to the insureds in *Tousignant* and *Owens*, plaintiff did not agree to accept that limitation when she chose her health care insurer. Nor did she choose to accept the limitations inherent in the benefits provided pursuant to the WDCA in exchange for a reduced premium. The fifty-six-hour limitation exists regardless of plaintiff's choice to coordinate her no-fault and health care insurance. Defendant's attempt to argue that by choosing coordinated coverage, plaintiff agreed to accept the limitations imposed by the WDCA and conform her treatment to the care compensable thereunder, is disingenuous.

Therefore, we conclude that defendant was not entitled to summary disposition because plaintiff did not hire a commercial agency to provide care that was required in excess of fifty-six hours. Having examined and rejected the two rationales for the court's decision, we reverse the order granting summary disposition in favor of defendant.

Reversed.

WHITE, J. (*concurring*). I agree that the trial court erred in concluding that no expenses had been incurred as a matter of law.

I also agree that under *Morgan v Citizens Ins Co of America*, 432 Mich 640; 442 NW2d 626 (1989), defend-

---

[2] 1985 PA 103 added the fifty-six-hour limitation on care provided by certain family members.

ant cannot, under § 3109(1), MCL 500.3109(1); MSA 24.13109(1), obtain a setoff for compensable services plaintiff could have obtained from an outside provider if those services are not duplicative of the services provided by her parents, because of differences in quality or service.

Lastly, I agree that this case is governed by § 3109(1) (benefits provided or required to be provided under the laws of any state or the federal government) and not § 3109a (other health and accident coverage), MCL 500.3109a; MSA 24.13109(1). See *Profit v Citizens Ins Co of America*, 444 Mich 281, 288-300; 506 NW2d 514 (1993) (BOYLE, J., concurring in part and dissenting in part).